STEWART v. UNITED STATES.

No. 11891.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 19, 1954 and June 11, 1954.

Decided July 15, 1954.

Mr. Foster Wood, Washington, D. C., filed a brief for appellant.

Mr. Gerard J. O'Brien, Jr., Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis A. Carroll, Frederick G. Smithson, and John D. Lane, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Mr. William J. Peck, Asst. U. S. Atty., Washington, D. C., at time record was filed, entered an appearance for appellee.

Mr. Abram J. Chayes, Washington, D. C., amicus curiae, appointed by this Court, with whom Mrs. Antonia H. Chayes, and Messrs. Wilbur R. Lester, Washington, D. C., and John B. Jones, Jr., Radnor, Pa., were on the brief, urged reversal.

Before EDGERTON, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

■■■ Appellant was sentenced to death upon conviction of first degree murder committed in robbing a grocery store.[1] His defenses at the trial were (1) that at the time of the killing he was not in the store, and (2) that he was insane.[2] There is not the slightest doubt

---

[1] 22 D.C.Code, 1951, § 2401.

[2] A pre-trial motion was filed on appellant's behalf for a mental examination to determine whether he was mentally competent to stand trial. The motion was denied on the basis of psychiatric examinations procured by the United States Attorney which found the accused to be of sound mind and capable of participating in his defense. Under 18 U.S.C. § 4244, however, the *court* is required to procure a mental examination upon a proper request therefor, and to determine for itself on the basis of such examination whether the accused is competent to stand trial. But since we reverse the conviction here on other grounds, it is unnecessary to determine whether the procedure followed on appellant's motion would also require reversal. Compare Perry v. United States, 1952, 90 U.S.App. D.C. 186, 195 F.2d 37.

from the evidence, however, that he committed the offense. The only substantial ground urged for reversal on this appeal relates to the court's instructions to the jury on the defense of insanity.[3]

Considerable testimony was offered relating to that defense. Appellant's family and acquaintances testified to numerous incidents of erratic conduct, including frequent outbursts of exaggerated and purposeless violence. A psychiatric witness for the defense testified that in his opinion appellant was suffering from a manic depressive psychosis at the time of the crime and that, although he probably knew right from wrong, he was unable to control his conduct in the light of such knowledge. On the other hand, it was the opinion of two psychiatrists who testified for the Government that, although appellant was of very limited intelligence, approaching or within the feeble-minded range, he had no psychosis or neurosis, was able to distinguish between right and wrong and was not under the pressure of an irresistible impulse.

■ The court properly instructed the jury on the "right-wrong" and "irresistible impulse" tests which prevailed when this case was tried.[4] But it also instructed,

"Now, have in mind, ladies and gentlemen, that the law does not recognize as insanity a mental disorder unless it is a real mental disease.

"There are many people who are psychopathic to one degree or another; they are maladjusted; emotionally unstable; resentful, for one reason or another, of society; of low intelligence; indifference [sic]

toward the rights of others, and so on. That is a psychopath. He is not insane within the meaning of the law; he is simply an abnormal, maladjusted, person, or subnormal, as the case may be; he is a misfit; he does not care about others; indifferent to them, and so on. You must distinguish in your mind between that kind of mental disorder, because it obviously is a mental disorder, and a real mental disease.

"The man who is in this court, as a defendant in a criminal case, time and time again, is an extreme example of what I am talking about. There is something wrong with his mind or he woud not do it in the first place, but it does not follow that he is insane.

"The kind of mental disorder I am talking about is a mental disease, just as I said before and as counsel on both sides have described it."

Read alone, the court's attempted distinction between "mental disease" and "mental disorder" was at least confusing. Read in the light of one explanation offered by the record, it is plainly erroneous. This explanation appears in the court's remarks, made during the trial and in the presence of the jury, that in criminal cases the question is whether the accused has a "mental disease, as distinguished from a mental disorder—not a pathological mental disturbance but a physiological one * * *." And it appears again when the court later asked the defense psychiatrist whether appellant "was suffering from a * * * physiological mental disease, as distinguished from a pathological condition

---

**3.** There is no merit in appellant's contentions that the trial court erred in denying his motion for severance from the trial of his wife and brother-in-law, charged as accessories, and in admitting their confessions containing implications against him. Severance normally is a matter for the discretion of the trial judge, and a denial thereof will not be upset on appeal unless amounting to an

abuse of discretion. Wheeler v. United States, 1947, 82 U.S.App.D.C. 363, 165 F.2d 225, certiorari denied, 1948, 333 U.S. 829, 68 S.Ct. 448, 92 L.Ed. 1115. We find no abuse of discretion here.

**4.** The tests prevailing when appellant was tried have since been broadened. Durham v. United States, 94 U.S.App.D.C. —, 214 F.2d 862.

* * *." In light of this explanation, the attempted distinction between "mental disease" and "mental disorder" could well have led the jury to conclude that only if appellant suffered from an abnormality due to physical deterioration of or injury to the brain could he be acquitted by reason of insanity. Clearly, the charge in this respect was erroneous and highly prejudicial to appellant.

Probably this attempted distinction was meant to implement the court's view that psychopathy is not a "mental disease" and cannot relieve one from criminal responsibility. The court reflected this view in its charge by expressly stating that a psychopath "is not insane within the meaning of the law * * *." And in defining a psychopath for the jury, the court stated, among other things, that a psychopath is a person "of low intelligence." The undisputed testimony showed that appellant was a person of low intelligence, but the only definition of a psychopath offered by a psychiatric expert came from a Government witness who testified that a psychopath is "usually of superior intelligence." Thus, the court invaded the combined functions of the expert witness and the jury by assertions which had the effect of treating factual issues as though they had already been settled by either the testimony or the law.[5] Clearly this was error. It was the jury's function to determine from all the evidence, including the expert testimony, not only whether appellant suffered from an abnormal mental condition, but also whether the nature and extent of any condition from which it found him to be suffering was such as to relieve him of criminal responsibility under the standards then prevailing.[6]

Since the charge was fatally defective, the conviction must be reversed and the case remanded for a new trial.[7]

After this case was submitted upon the briefs and argument of counsel for the appellant and the Government, we designated Abram J. Chayes, a member of our bar, as amicus curiae to assist in this court's reconsideration, undertaken here and in Durham v. United States,[8] of the tests of criminal responsibility to be applied when the sanity of an accused is in issue. This reconsideration resulted in a broadened test, announced in Durham, which will, of course, be applicable upon the retrial of this case.

The amicus also urged adoption of a rule of diminished responsibility to be applied in capital cases. Under such a rule, if the jury found (1) that the accused suffered from a mental disorder not amounting to insanity sufficient to excuse him from criminal responsibility under applicable tests, and (2) that such mental disorder deprived him of the requisite "sound memory and discretion" essential for conviction of first degree murder, it could convict him of the lesser crime of second degree murder.[9]

---

5. "It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." Starr v. United States, 1894, 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841.

6. See Durham v. United States, supra, 214 F.2d at page 876.

7. The Government questions whether errors in the court's instruction were properly preserved. "It has always been the custom of this court, however, 'in cases of serious criminal offenses, to check carefully the record for error prejudicial to defendant which he did not urge.' This accords with Rule 52(b) of the Federal Rules of Criminal Procedure * * *." Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 388–389, 190 F.2d 612, 614–615; Williams v. United States, 1942, 76 U.S.App.D.C. 299, 300, 131 F.2d 21, 22, and cases cited note 3.

8. 94 U.S.App.D.C. ——, 214 F.2d 862.

9. The amicus recognized, but did not regard as insuperable, the difficulties in applying such a rule where, as here, the murder is committed in the course of perpetrating the felony of robbery. Under the District of Columbia statute, such an offense constitutes murder in the first degree even though there is no premeditation or "intent or desire to kill." Mum-

A like contention was rejected by this court in Fisher v. United States.[10] In affirming, the Supreme Court declined "to force the District of Columbia to adopt such a requirement for criminal trials * * *," observing that "Such a radical departure from common law concepts is more properly a subject for the exercise of legislative power or at least for the discretion of the courts of the District."[11] Despite the force of the considerations[12] presented so persuasively by the amicus,[13] we have concluded that reconsideration of our decision in Fisher should wait until we can appraise the results of the broadened test of criminal responsibility which we recently announced in Durham. Only upon such an appraisal will it be possible to determine whether need for the rule remains.

Reversed and remanded for a new trial.

forde v. United States, 1942, 76 U.S. App.D.C. 107, 130 F.2d 411, certiorari denied, 317 U.S. 656, 63 S.Ct. 53, 87 L.Ed. 527. However, we note without comment amicus' contention that the rule of diminished responsibility could nevertheless apply in such circumstances, either (a) by permitting the jury to consider whether the accused had the capacity to formulate the requisite intent for the underlying felony, or (b) as a device for the mitigation of punishment in accordance with the subjective responsibility of the accused.

10. 1945, 80 U.S.App.D.C. 96, 149 F.2d 28. For earlier cases holding that an accused is not entitled to an instruction on diminished responsibility for a mental disorder short of insanity, see Guiteau's Case, 1882, 10 F. 161, 182–183; Bolden v. United States, 1934, 63 App.D.C. 45, 69 F.2d 121; Owens v. United States, 1936, 66 App.D.C. 104, 85 F.2d 270.

11. Fisher v. United States, 1946, 328 U. S. 463, 476, 66 S.Ct. 1318, 1324–1325, 90 L.Ed. 1382. The dissenting opinion of Mr. Justice Frankfurter presents strongly persuasive arguments for adoption of the rule.

12. Among these considerations are the following:

(1) Diminution of guilt on the basis of mental disorder falling short of legal insanity comports with modern psychiatric knowledge which denies that persons are either absolutely responsible or absolutely irresponsible. White, Insanity and the Criminal Law 89 (1923); Report of the Royal Commission on Capital Punishment, Cmd. 8932, 142; Overholser, The Psychiatrist and the Law 46 (1953). As the Supreme Court recognized in Fisher, "No one doubts that there are more possible classifications of mentality than the sane and the insane." 328 U.S. at page 475, 66 S.Ct. at page 1324, citing White, Insanity and the Criminal Law 89.

(2) This court has held that in a first degree murder case the jury must be instructed that it cannot find the accused guilty if at the time of the killing he was so overcome by alcohol that he could not premeditate or deliberate. McAffee v. United States, 1940, 72 App.D.C. 60, 66, 111 F.2d 199, 205, certiorari denied 310 U.S. 643, 60 S.Ct. 1094, 84 L.Ed. 1410. See also Hopt v. People, 1881, 104 U.S. 631, 26 L.Ed. 873. By analogy, an inability to deliberate by reason of mental deficiency falling short of legal insanity would seem to call for comparable treatment.

(3) First degree murder, as defined by the District of Columbia statute (22 D.C.Code 1951, § 2401), requires that the accused be "of sound memory and discretion," a requirement lacking in the definition of lesser degrees of murder. Since insanity is a defense to all degrees of murder, this suggests that in first degree murder cases juries should give special consideration to the mental condition of a legally sane defendant. See Keedy, A Problem of First Degree Murder; Fisher v. United States, 99 U. of Pa.L. Rev. 267, 287–288 (1950).

13. We are indebted to the amicus for a survey of State statutes and decisions relating to the limited responsibility principle. This survey discloses that the doctrine is accepted in nine States, probably accepted in five more, rejected in six, and probably rejected in five.