STATE OF MONTANA, Plaintiff and Respondent, *v.* JOHN
DAVID NEEL, Defendant and Appellant.

No. 13997.
Submitted May 1, 1978.
Decided June 15, 1978.
580 P.2d 456.

Smith, Connor & VanValkenburg, Noel K. Larrivee, argued,
Missoula, for defendant and appellant.

Mike Greely, Atty. Gen., Helena, Marc F. Raciot argued, Asst. Atty. Gen., Helena, Robert L. Deschamps III, County Atty., Missoula, Karen S. Townsend, Deputy County Atty., argued, Missoula, for plaintiff and respondent.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

Defendant appeals from his conviction of committing sexual intercourse without consent following a jury trial in the Missoula County District Court.

At the time of the incident in question, the defendant, John David Neel, was an employee of the Holding Company, a disco-dance establishment in Missoula, Montana. On the evening of February 26, 1977, Neel finished work about 8:00 p.m., went home to clean up, and returned to the Holding Company about 10:30 p.m. to have a few drinks. During a dance break, Richard Solberg, the disc jockey at the Holding Company, introduced Neel to a friend of his, Jerri Lynn Hardy.

When defendant discovered that Jerri Hardy and Solberg planned to go to breakfast after the Holding Company closed for the evening, he invited himself along. The three of them left the Holding Company in Jerri's car, but Solberg then decided that he should go directly home as he was expecting a call from his wife who was out of town at the time.

After Jerri dropped Solberg off at his house, defendant, who had been drinking beer while they were in the car, became pushy and aggressive. He demanded that Jerri take him to her house so he could party and drink more beer. At that point, Jerri drove to several friends' homes to get help, but none of them were home. Finally, she drove to her trailer, but defendant refused to leave.

Once inside the trailer, defendant listened to records for awhile and drank more beer. Finally, defendant grabbed Jerri, assaulted her, dragged her into a bedroom, and forced her to have sexual intercourse with him. Afterwards, defendant washed blood off his face from where Jerri had scratched him, told Jerri he was sorry,

and asked her not to report the incident to the police. If she did, he said he would get friends to vouch that he had been in a fist fight.

After dropping defendant off near the Missoula City Police station, Jerri drove to the Missoula County Sheriff's office and reported the incident. While she was at the sheriff's office, defendant arrived there and Jerri heard him through the office intercom tell the deputies that he had been assaulted by two male Indians. The deputies referred defendant to the city police station, to report the incident.

When he arrived at the police station defendant told police officers that he had been assaulted by two male Indians at approximately 2:30 a.m. that morning, February 26, after he had been dropped off on a downtown street by a young lady. He claimed to have been knocked unconscious and to have come to just before 7:00 a.m. when he reported the incident. When the police officers were informed of the incident involving Jerri Hardy, they determined that defendant matched the description of the person who assaulted her and arrested him.

Defendant was charged by Information in a District Court, Missoula County, with committing sexual intercourse without consent. At trial he relied upon the defense of mental disease or defect excluding responsibility. At the close of the testimony, the District Court refused to submit to the jury defendant's four instructions concerning that defense. The jury convicted defendant, and pursuant to the persistent felony offender statute, the District Court sentenced defendant to 30 years in prison.

The sole issue defendant raises on appeal is whether he produced sufficient evidence of his alleged mental disease or defect excluding responsibility to justify submitting that issue to the jury.

Defendant contends that Montana's statutes on mental disease or defect excluding responsibility create two burdens for him: (1) The initial burden of "going forward" with the evidence to put his insanity in issue; and (2) the ultimate burden of persuading the trier of fact of his insanity by a preponderance of the evidence. He reasons that once he has produced "some evidence" on the question

of his insanity, he is entitled to submit instructions to the jury on the insanity defense and consequently, bear the burden of convincing the jury of the defense by a perponderance of the evidence, citing *Davis v. United States.* (1895), 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499; *United States v. Hartfield*, (9th Cir. 1975), 513 F.2d 254, *United States v. McCracken*, (5th Cir. 1974), 488 F.2d 406; *McDonald v. United States*, (1962), 114 U.S.App.D.C. 120, 312 F.2d 847; and *Tatum v. United States*, (1951), 88 U.S.Ap.D.C. 386, 190 F.2d 612. As to what constitutes "some evidence", defendant proposes that exact quantification is neither feasible nor desirable, but that it means more than a scintilla of evidence yet less than the amount needed to support a directed verdict of acquittal, citing *United States v. McCracken*, 488 F.2d at 409; *McDonald v. United States*, 114 U.S.App.D.C. at 122, 312 F.2d at 849; and *Hall v. United States*, (4th Cir. 1961), 295 F.2d 26, 28. Defendant argues that he did produce sufficient evidence of his insanity to justify submitting the issue to the jury.

The difficulty which defendant's analysis is that he relies upon cases from federal jurisdictions which do not place the ultimate burden of proving insanity upon the defendant. In the federal system, the government has the ultimate burden of proving sanity, although it is aided in this by a presumption of the defendant's sanity. If the defendant introduces "some evidence" tending to show his insanity, the government must then produce actual evidence to prove the defendant's sanity beyond a reasonable doubt. *United States v. McCracken*, 488 F.2d at 409.

In Montana the defendant is also presumed sane. *State v. McKenzie*, (1978), 177 Mont. 280, 581 P.2d 1204, (Decided June 7, 1978). In contrast to the federal system, however, mental disease or defect excluding responsibility is an affirmative defense which the defendant must prove by a preponderance of the evidence. Section 95-503(a), R.C.M.1947. Therefore, to justify submitting instructions to the jury on that defense, the defendant must introduce "some evidence" on each of its elements. See, *State v. Miner*, (1976), 169 Mont. 260, 267, 546 P.2d 252, 256.

At the time of the incident in question, the pertinent statute provided:

"95-501. *Mental disease or defect excluding responsibility.* (a) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he is unable either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) As used in this chapter, the terms 'mental disease of defect' does not include an abnormality manifested only by re-repeated criminal or otherwise antisocial conduct."

■ To justify submitting this defense to the jury, defendant must have introduced some evidence showing: (1) That he had a mental disease or defect at the time of the incident; and (2) that at a result of such mental disease or defect the defendant was unable (a) to appreciate the criminality of his conduct, or (b) to conform his conduct to the requirements of the law.

At trial defendant, who was then 26 years old, testified that he had been under going psychiatric counseling since the age of four. He was diagnosed as epileptic and hyperkinetic, and since that time had been taking such drugs as Dilantin, Stelazine and Thorzaine to control his behavior. Defendant had been using prescribed drugs for 21 years and had been using illicit drugs such as LSD since 1965. He testified that he suffered from an inability to think correctly, from flashbacks, and from loss of memory due to his use of the prescribed drugs. He considered himself "not very emotionally stable". In 1972 he received a psychiatric discharge from the Navy.

In the week prior to the incident defendant slept only about 6 hours. At the same time, he worked long hours at the Holding Company. On the night in question he drank from 8:00 p.m. onward during which time he consumed 6 to 8 "double rum and cokes" and several beers. At trial he claimed he had been experienced an amnesic blackout that night and could not remember what happened to him between 1:30 a.m. and 6:00 a.m., when he cane to and found himself lying in the street.

Defendant's expert, Dean Beisemeyer, was a clinical psychologist who first met defendant in 1968 or 1969, when defendant came to him for therapy. At that time Beisemeyer diagnosed defendant as suffering from anxiety, immaturity, over-dependence, suppressed hostility and possible organicity (brain damage), although Beisemeyer admitted the existence of organicity was never substantiated. When Beisemeyer last counseled the defendant in 1971 or 1972, he felt that most of defendant's problems were due to emotional disturbance rather than to organicity.

Given hypothetically defendant's emotional and ego control problems and possible organicity, Beisemeyer testified that alcohol ingestion would reduce those factors suppressing defendant's aggressiveness, thereby causing his aggressiveness to be manifested. Extended lack of sleep, he thought, would also add to defendant's lack of control. Under these circumstances Beisemeyer concluded that defendant would have *difficulty* conforming his conduct to the requirements of law.

We hold as a matter of law this testimony is insufficient to support a conclusion that at the time of the commission of the offense defendant suffered from a mental disease or defect which would exclude his criminal responsibility. The Revised Commission Comment to section 95-501, R.C.M.1947 (amended 1977) indicates that the defense of mental disease or defect excluding responsibility includes any physical abnormality or subnormality such as emotional deficiencies that have reached the dimension that they can be termed mental disease or defect. Defendant has not shown that this was the case.

Beisemeyer's diagnosis was based on defendant's emotional problems between 1968 and 1972, at least five years before the incident involved here. Any emotional problems which defendant may have experienced on the night in question were aggravated by his voluntary ingestion of alcohol and his extended lack of sleep. At trial Beisemeyer refused to conclude that defendant's hostility constituted a mental disease or defect because "mental disease or defect" was a legal term. Nor was there evidence that defendant

was unable to conform his conduct to the requirements of law or to appreciate the criminality of his conduct. Beisemeyer testified only that defendant would have *difficulty* conforming his conduct to the requirements of law. We hold therefore, that the District Court did not err in refusing to submit defendant's proposed instructions on the defense of mental disease or defect to the jury.

In its brief the State challenges the correctness of defendant's proposed instructions. In view of our decision that the District Court was correct in refusing to submit those instructions to the jury, it is unnecessary to discuss the propriety of defendant's instructions.

Judgment affirmed.

MR. JUSTICES DALY, HARRISON, SHEA and SHEEHY concur.