**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Juanita WILLIAMS, Defendant-Appellant.**

**No. 15657.**

United States Court of Appeals
Seventh Circuit.

Jan. 31, 1967.

Rehearing Denied March 6, 1967 en banc.

Joseph E. McHugh, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Lawrence Jay Weiner, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Asst. U. S. Atty., of counsel.

Before SCHNACKENBERG, CASTLE and CUMMINGS, Circuit Judges.

CASTLE, Circuit Judge.

Juanita Williams, the defendant-appellant, prosecutes this appeal from a judgment order of conviction and sentence entered following her trial before the court without a jury on a four count indictment charging her with the unlawful sale and the unlawful receipt, etc., of designated quantities of heroin, a narcotic drug, on March 31, 1965, and on April 5, 1965, in violation of 26 U.S.C.A. § 4705(a) and 21 U.S.C.A. § 174, respectively. The defendant's appeal presents the single issue whether the District Court erred in rejecting the defendant's defense of insanity at the time of each of the alleged offenses.

The defendant testified at the trial. She admitted the sale of heroin to a government agent on each of the two occasions alleged. She further testified that she had been addicted to narcotics since 1958, was experiencing withdrawal symptoms on each of the occasions involved, and upon the representation that she would be given a "fix" she obtained the narcotics for the agent and that on both of the occasions the agent gave her a portion of the narcotics he purchased from her, for her own use. The agent who made the purchases testified that on the dates involved he did not observe symptoms indicating that defendant was going through a withdrawal. He denied that he gave any narcotics to the defendant, or that any promise or gratuity was made or given to the defendant other than payment of the purchase price she asked.

The defendant further testified that during the two years she served at Lexington for a previous narcotics law violation, and for six months thereafter, she did not use narcotics and that for the preceding four or five months she had remained drug free, without medical assistance, because "I didn't feel like it would look right coming to court with a habit". She stated that at the time of the sales here involved she was consuming at least four to five $20.00 bags of heroin a day; that she was unemployed; and that her means of supplying herself with the drug was by obtaining it for

others and receiving some for herself as a part of the transaction.

A psychiatrist, called by the defendant as an expert witness, testified that he made one-hour examinations of the defendant in February and March, 1966, and from such examinations and the information given him by the defendant his diagnosis was that the defendant was without psychosis or neurosis but suffered from a personality disorder; that she was an immature, passive, dependent, submissive, insecure person with a personality pattern disturbance—schizoid personality with pseudo-sociopathic tendencies—caused by a low frustration tolerance; that after her initial use of narcotics she had a psychological and physiological need for narcotics; her addiction is a remissive and recidivistic mental disease which necessitated the commission of the offenses charged, and her addiction impaired her ethical and moral judgment and her capacity to conform her conduct to the requirements of the law. But the witness further testified that the defendant can make a decision as to what is right and wrong; that the defendant knew her conduct was contrary to societal standards and was aware of possible punishment; that she has no difficulty in cognition, and is capable of deciding to abstain; that once again (prior to and during the trial) she has made a choice to abstain from narcotics, and to so abstain required her use of volition; that the defendant would have been capable of deciding whether to commit other offenses on the dates involved but "in her context of being a drug addict, she has had to make some type of compromise, some type of resolution of this thing within herself that she needs drugs. She has to get her drugs. So, she gets them through the only way she can get them and that is through devious anti-social means".

■ We have carefully examined and considered all of the testimony bearing upon the defendant's mental status and capacity, certain of the salient portions of which we have summarized above. It appears that the defendant suffered from a personality disturbance which existed apart from and in addition to her narcotic addiction, and which may have contributed to the latter. But even if the seeming inconsistency between some of the conclusions expressed by the psychiatric witness concerning defendant's cognitional and volitional capacities be disregarded we perceive nothing in the record which requires a conclusion that the defendant lacked the mental capacity requisite to criminal responsibility, either from the standpoint of cognition or of volition, at the time of the sales in question, as measured by the standard recognized by this Court in United States v. Cain, 7 Cir., 298 F.2d 934; United States v. Westerhausen, 7 Cir., 283 F.2d 844; and United States v. Cooks, 7 Cir., 359 F.2d 772, as governing the determination of such issue.

■ The trier of the facts was an able, distinguished, and long-experienced trial judge. The presumption that he knew and applied the proper standard in evaluating and rejecting the insanity defense interposed by defendant (Hightower v. United States, 117 U.S.App.D.C. 43, 325 F.2d 616, 619) is not in our opinion overcome by anything revealed by an appraisal of the evidence on which that determination was made.

We are not persuaded by defendant's contention that a remark made by the trial judge at the conclusion of the closing argument by counsel, together with the colloquy between the court and counsel which followed, establishes that the trial court applied an impermissible standard in rejecting defendant's insanity defense and in determining that she was sane from the standpoint of criminal responsibility. In this connection the defendant refers to the comment of the trial judge that:

"* * * But, I think, when all is said and done, the real test in an alleged crime of this kind is whether or not the defendant was capable of distinguishing right from wrong."

But, upon inquiry by defendant's counsel as to whether the court was applying a rule utilizing knowledge of right from

wrong "as one test", the court immediately rejoined, "[t]hat is one test, but it is not the only test".

■ Thus, the initial remark when appraised in the context which followed is qualified by the court's recognition that capability of distinguishing right from wrong is not the sole determinative factor involved in the resolution of the issue under consideration.

■ In our judgment neither the incident of the remark, nor the court's subsequent refusal to elaborate on the rationale of its decision by identifying it with any one of the particular sources or decisions to which counsel made reference, affords any basis for concluding that the court's ultimate determination was the product of reversible error.

The judgment order appealed from is affirmed.

Attorney Joseph E. McHugh, a member of the Chicago, Illinois, Bar, represented the defendant as court-appointed counsel. We express our appreciation to him for the able service he performed in this assignment.

Affirmed.

CUMMINGS, Circuit Judge (dissenting).

In the District Court, the United States Attorney requested the Court to apply the 1843 M'Naghten "right from wrong" test [1] in ruling upon the defendant's insanity defense. At the trial, the Government stated that this test had been approved by this Court in United States v. Westerhausen, 283 F.2d 844 (7th Cir. 1960). However, in *Westerhausen,* Chief Judge Hastings observed (at p. 851):

"This case does not involve the proper test for legal insanity."

Thus the *Westerhausen* case did not approve the M'Naghten rules.

In opposition to the Government's position in the court below, defense counsel urged the District Court to apply the insanity instruction promulgated in 1963 by Judge La Buy for use in the Seventh Circuit. That instruction provides as follows (33 F.R.D. at p. 560):

"The defendant has interposed insanity as a defense. The law presumes that a defendant is sane. This presumption is rebuttable. Where a defendant introduces some evidence that he had a mental disease or defect at the time of the commission of the crime charged, the prosecution must establish beyond a reasonable doubt that the defendant did not have a mental disease, or that despite the mental disease he had the capacity either to *know* the criminality of his conduct, or to conform his conduct to the requirements of the law." (Italics supplied.)

Defense counsel pointed out that the La Buy instruction is in effect "a promulgation acceptance of the American Law Institute" 1962 Model Penal Code which provides:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks a susbtantial capacity either to *appreciate* the wrongfulness of his conduct or to conform his conduct to the requirements of the law." (Italics supplied.)

He pointed out too that the Model Penal Code rule was recently adopted by the Second Circuit in United States v. Freeman, 357 F.2d 606 (2nd Cir. 1966).[2] It should be noticed that the Model Penal Code employs "appreciate" the wrongfulness of conduct instead of the stricter

---

1. Although this test was expressed in the 1843 *M'Naghten* case, it is actually 375 years old. United States v. Currens, 290 F.2d 751, 764 (3rd Cir. 1961).

2. In addition to the three-judge panel assigned to the *Freeman* case, four other members of the Court of Appeals for the

Second Circuit have approved the standard of criminal responsibility adopted in *Freeman* (see 357 F.2d at p. 606). See also United States v. Currens, 290 F.2d 751 (3rd Cir. 1961) and Wion v. United States, 325 F.2d 420 (10th Cir. 1963), certiorari denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309.

"know" in the La Buy instruction. This difference is substantial and not a mere exercise in semantics (see 357 F.2d at pp. 618–619, 623, 624; see also Comments cited in note 3 infra).

After the colloquy on the proper test to be applied respecting the defense of insanity, the District Court stated:

"But, I think, when all is said and done, the real test in an alleged crime of this kind is whether or not the defendant was capable of distinguishing right from wrong."

Although it is possible that in his own mind the District Judge followed the correct standard, we cannot so presume when, as shown, the record affirmatively indicates the contrary. Hightower v. United States, 117 U.S.App.D.C. 43, 325 F.2d 616, 623 (1963; dissenting opinion of Judge Fahy). Moreover, the Government had been pressing for the application of the right from wrong test.

In United States v. Cain, 298 F.2d 934, 936 (7th Cir. 1962), certiorari denied, 370 U.S. 902, 82 S.Ct. 1250, 8 L.Ed.2d 400, this Court approved a mental competency instruction because it was "substantially that provided in the Illinois Code" which had adopted the ALI Model Penal Code standard (Ill.Rev.Stat.1965, Ch. 38, § 6–2).[3]

This Court's most recent consideration of the proper test governing the insanity defense was in United States v. Cooks, 359 F.2d 772, 773, 778 (7th Cir. 1966). There Judge La Buy's standard instruction was applied by the District Court, and this Court refused to hold the instruction erroneous.

For the reasons given in United States v. Freeman, 357 F.2d 606 (2nd Cir. 1966), the ALI Model Penal Code standard of criminal responsibility should be adopted in this Circuit. As noted, Illinois has already approved this test by statute. Wisconsin has also approved the Model Penal Code standard in State v. Shoff-

ner, 31 Wis.2d 412, 143 N.W.2d 458 (1966).

At the oral argument of the instant case, we were advised that the Government does not object to the adoption of the Model Penal Code rule for this Circuit. If that standard had been applied here, the defense of insanity might have been sustained, as shown by the psychiatric testimony partly summarized in the majority opinion. Since this defendant's responsibility was determined under the obsolete M'Naghten rule, the conviction should be reversed and the case remanded for a new trial employing the criteria of the Model Penal Code.

Rehearing denied en banc.

CUMMINGS, C. J., voted to grant.

---

3. The reasons that Illinois rejected the M'Naghten test in favor of the formulation in the Model Penal Code are shown in the Comments of the Joint Committee to Revise the Illinois Criminal Code (38 Smith-Hurd Ill.Ann.Stats. § 6–2, at pp. 214–219).