**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond Charles SHAPIRO, Defendant-Appellant.**

**No. 15677.**

United States Court of Appeals Seventh Circuit.

Aug. 24, 1967.

Dennis J. Horan, Chicago, Ill., for appellant.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., Jerome M. Feit, Dept. of Justice, Washington, D. C., Fred M. Vinson, Jr., Asst. Atty. Gen., Beatrice Rosenberg, Atty., Criminal Division, Dept. of Justice, Washington, D. C., Kenneth P. Fedder, Asst. U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge, SCHNACKENBERG, KNOCH, CASTLE, KILEY, SWYGERT, FAIRCHILD, and CUMMINGS, Circuit Judges.[1]

FAIRCHILD, Circuit Judge.

Defendant Shapiro, a prison inmate, was convicted by a jury of a violation of 18 U.S.C.A. § 876, entitled "Mailing threatening communications." He was sentenced to a five-year term to run consecutively with the sentence he was already serving.

[1] This appeal was originally heard before a panel consisting of Senior Circuit Judge Duffy and Circuit Judges Kiley and Fairchild. The panel suggested to the full court that decision of one issue raised by appellant involves serious consideration of adoption of a defense of insanity not heretofore adopted in the circuit. Pursuant to an order entered, *sua sponte*, by the full court, the cause was reargued before the court *en banc*.

On appeal, defendant claims (1) that there is a fatal variance between the indictment and the proof, (2) that the trial court erred in admitting his confession into evidence, (3) that his being disciplined by prison authorities for virtually the same act for which he was convicted constituted cruel and unusual punishment, and (4) that the trial court erred in not giving a *Durham* instruction on insanity, as requested, or at least an instruction based on the American Law Institute Model Penal Code.

(1) *Variance.* The indictment charged that defendant Shapiro "wilfully and knowingly did deposit in an authorized depository for mail matter, to be sent by the Post Office Department" a threatening letter, quoted in full, in violation of 18 U.S.C.A. § 876.

The letter was addressed to District Judge Grant (who had sentenced Shapiro) and threatened injury to the judge and his family. It was proved beyond question that Shapiro wrote the letter, placed it in a receptacle in the penitentiary known as the prisoners' mail box, and that Judge Grant received it through the mail.

■ 18 U.S.C.A. § 876 provides a penalty for one who "knowingly deposits in any post office or authorized depository for mail matter, to be sent or delivered by the Post Office Department or knowingly causes to be delivered by the Post Office Department according to the direction thereon, any communication * * *" etc. If the indictment had been drafted in terms of causing to be delivered by the post office, there could be no question but that the charge had been proved. Defendant points out, however, that the charge was stated in terms of depositing the letter in an authorized depository for mail matter and that the record is equivocal as to the character of the prisoners' mail box. It is not at all clear that the prisoners' mail box is a receptacle from which post office employees have the duty to pick up mail, and the

evidence at least suggests that penitentiary employees remove the contents, take them to the penitentiary mail room, and ultimately turn them over to the post office department.

■ We conclude the claim of variance has no merit. Although the statute is grammatically in the alternative, it is apparent that in almost all conceivable instances the alternative expressions are just different ways of describing the same act. Furthermore, even if the prisoners' mail box was not a depository authorized by the post office department (and thus a part of the postal system for the handling and transmission of mail, regulated and protected by various postal laws and regulations), the circumstances of its use were such that by depositing the letter in it, defendant made the prison employees his agents to deposit the letter in the post office or other authorized depository. In the context of a different problem, it has been said that there is "no legal difference between mailing the letter and causing it to be mailed. If appellant mailed it himself, he thereby caused it to be mailed. If he caused someone else to mail it, he became a principal in the act of mailing it, and, legally speaking, mailed it himself." [2]

This indictment sufficed to inform defendant that he was accused of the offense which was proved, so as to enable him to prepare his defense and to plead the judgment in bar of any further prosecutions for the same offense.[3]

(2) *The confession.* A statement written out and signed by Shapiro at the request of an FBI special agent was admitted in evidence. The court found the statement was voluntarily given after Shapiro was advised of his rights. Virtually the only argument made on appeal is that there was unfairness in that the agent, who knew the letter was placed in the prisoners' mail box, induced Shapiro to write that he had "deposited the same in the U. S. mails." The special agent

---

**2.** Sutton v. United States (9th Cir. 1935), 79 F.2d 863, 865; 18 U.S.C.A. § 2(b).

**3.** See Strauss v. United States (7th Cir. 1965), 347 F.2d 691, 692.

testified that, to him, putting the letter in the prisoners' mail box and depositing it in the U. S. mails were the same thing. In view of our conclusion on the first point, this point has no significance in any event.

(3) *Cruel and unusual punishment.* Shortly after defendant mailed the letter, he was punished by the disciplinary board because sending this letter violated the rules of the institution. He was deprived of 30 days earned time toward parole. Defendant points out that since he received the five-year maximum sentence, the 30 days delay in parole will result in a loss of liberty for a longer time than authorized by the statute violated. Defendant does not argue that the criminal prosecution placed him in second jeopardy, but he does claim that the loss of liberty for five years plus 30 days is cruel and unusual punishment.

He does not tell why it could be called cruel. Presumably he argues only that it is unusual, because Congress has decided that five years is the appropriate maximum for the offense.

The answer to this claim, as well as to the double jeopardy claim sometimes made, is that administrative disciplinary action under and within the first sentence, simply making service of it more burdensome, and the imposition of punishment upon conviction of an offense are distinct and separate even though one and the same act constituted both the infraction of the prison rules and the criminal offense.

The principle was well stated by the 8th circuit in 1944:

"There is no double punishment. The two matters were entirely distinct and separate. The allowance of good time, until earned for the entire term * * * is a privilege which is conditioned expressly by [18 U.S.C.A. § 4161] allowing it upon a record of conduct showing 'that he has faithfully observed all the rules and has not been subjected to punishment.' * * * The existence or the forfeiture of good time is in no sense dependent upon whether the misconduct also may be a criminal act. It would be a strange anomaly if a mere infraction of prison rules would be a basis for forfeiture while commission of a serious crime while in custody and in respect to such custody could not be. This would lead to an absurd result." (Citations omitted) [4]

(4) *Definition of the defense of insanity.* The district court defined the defense of insanity, as follows:

"'Insane,' as used here means such a perverted and deranged condition of a person's mental and moral faculties as to render him either

"(1) incapable of distinguishing between right and wrong, or incapable of knowing the nature of the act he is committing; or

"(2) where he is conscious of the nature of the act he is committing and able to distinguish between right and wrong and knows that the act is wrong, yet his will, by which I mean the governing power of his mind, has been so completely destroyed that his actions are not subject to it, but are beyond his control."

This definition is the same in substance as the definition which the Supreme Court approved as not prejudicial to the defendant in Davis v. United States.[5] It differs from the traditional pure M'Naghten definition in that it includes, as an alternative element, a defendant's lack of power, by reason of mental illness or defect, to control his conduct, *i. e.,* lack of volitional capacity.

The Supreme Court did not say in *Davis* that a pure M'Naghten definition,

---

4. Pagliaro v. Cox (8th Cir. 1944), 143 F. 2d 900, 901.

5. (1897), 165 U.S. 373, 378, 17 S.Ct. 360, 41 L.Ed. 750. This is the second *Davis* case. The first *Davis* decision dealt with the burden of proof on the issue of insanity. Davis v. United States (1895), 160 U.S. 469, 16 S.Ct. 353, 40 L. Ed. 499.

concerned only with cognitive capacity, *i. e.* whether defendant had capacity to know the nature and quality of his acts and distinguish between right and wrong, would have been prejudicial. It is usually assumed, however, that the court would so hold, and that federal courts are committed to some type of definition in which lack of volitional capacity is an alternative element (like *Davis* and the American Law Institute definition) or to one, such as *Durham*, which is not concerned with the particular way by which mental illness or defect operates to cause the defendant to engage in offensive conduct.[6]

■ This court has not specifically approved a particular definition, but it is clearly committed to some type of definition involving consideration of volitional capacity even where there is cognitive capacity.[7] Hence, we need not be concerned with the traditional or pure *M'Naghten* definition, which deals only with cognitive capacity.[8] The issues presented here are whether the American Law Institute definition is to be preferred over the *Davis* definition, used in the instant trial, and whether *Durham* or

some other definition which is not concerned with the particular capacity of the defendant which has been impaired or destroyed is to be preferred over the type of definition which embodies a cognitive volitional formula.

*American Law Institute (ALI) definition*

"(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.

"(2) As used in this article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." [9]

Comparing the (ALI) definition with the *Davis* definition, one perceives the following points of difference:

(1) *Davis* as given in this case refers to "perverted and deranged condition of a person's mental and moral faculties," where ALI refers to "mental disease or

---

**6.** "There are three types of competing definitions: (1) M'Naghten, or right-wrong, stated in terms of loss of capacity to know the nature and quality of one's acts or to know right from wrong, or distinguish between them. It is immaterial whether there has also been loss of power to control one's conduct. It is assumed that one does not really lose power of self control unless one has also lost power to know the nature and quality of one's acts or to distinguish between right and wrong. (2) Definitions under which inability to know the nature and quality of one's acts or to distinguish between right and wrong constitutes a defense, but loss of power of self control, even if standing alone is also a defense. The so-called irresistible impulse modification of M'Naghten falls in this case, as does also the proposed American Law Institute definition. The latter requires an impairment of one capacity or the other, but not total loss of either. (3) The Durham or New Hampshire definition. 'An accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect.' This

definition comes close to leaving the ultimate question of the jury and, in a sense, is not a standard." State v. Esser (1962), 16 Wis.2d 567, 586–587, 115 N.W. 2d 505, 515–516. (Footnotes omitted.)

**7.** United States v. Williams (7th Cir. 1967), 372 F.2d 76, petition for certiorari pending; United States v. Cooks (7th Cir. 1966), 359 F.2d 772; United States v. Cain (7th Cir. 1962), 298 F.2d 934; United States v. Westerhausen (7th Cir. 1960), 283 F.2d 844.

**8.** In a different jurisdiction and against a different historical background, the author of this opinion recorded his preference for retaining an existing traditional M'Naghten definition unless the burden of proof on the issue of insanity could be imposed on the defendant. See State v. Esser, *supra*, N. 6, 115 N.W.2d p. 521, and State v. Shoffner (1966), 31 Wis.2d 412, 143 N.W.2d 458, 464.

**9.** The American Law Institute Model Penal Code, Proposed Official Draft, May 14, 1962, p. 66, § 4.01.

defect" (not including "an abnormality manifested only by repeated criminal or otherwise anti-social conduct").

(2) *Davis* as given in this case refers to one who is "incapable of distinguishing between right and wrong, or incapable of knowing the nature of the act he is committing" where ALI refers to one who "lacks substantial capacity * * * to appreciate the criminality [wrongfulness] of his conduct."

(3) *Davis*, as given in this case, refers to one "who is conscious of the nature of the act he is committing and able to distinguish between right and wrong and knows that the act is wrong, yet his will * * * the governing power of his mind, has been so completely destroyed that his actions are not subject to it, but are beyond his control," where ALI refers to one who "lacks substantial capacity * * * to conform his conduct to the requirements of law."

With respect to point (1), it is our impression that the ALI terms are probably more meaningful to a jury in the light of the expert testimony they have heard. With respect to point (2) there seems to be little reason for preference unless it be that the ALI expression is shorter and does not require the total incapacity in the cognitive area which may be implied in *Davis*. In this respect we observe, also, that some will prefer the word "understand" over "appreciate" or "wrongfulness" over "criminality" in the ALI expression. With respect to point (3) the concept of lack of capacity to conform (ALI) rather than destruction of governing power seems, again, to be more consonant with medical testimony on the subject. The important difference, however, seems to us to be that *Davis* requires complete destruction of power of self-control, where ALI requires only that defendant have less than "substantial capacity" to conform his conduct. It is our impression that in this difficult field absolutes are not realistic, and that the ALI approach is preferable.[10]

We note, and give weight to an apparent trend among the circuits toward adoption of the ALI definition.

In 1961, the third circuit, in substance, agreed with the ALI definition, although it limited its express definition to the volitional element of ALI, that is, lack of substantial capacity to conform conduct to requirements of law.[11] In 1963, the tenth circuit adopted ALI, but required additional instructions that in order to convict the jury must be convinced that defendant was mentally capable of knowing what he was doing, that it was wrong, and of controlling his conduct.[12] In 1966, the second circuit adopted the ALI definition, substituting "wrongfulness" for "criminality." [13]

The eighth circuit has recently repeated its earlier expression that instructions following ALI or other forms would be satisfactory if they required positive findings on the various elements, including capacity to control.[14] In 1963, the fifth circuit, in an affirmance by an equally divided court, seems to have retained the *Davis* definition.[15]

In argument of this appeal, the government distinguishes between definitions of the defense of insanity which call for a moral judgment by the jury, and those definitions which are "medi-

---

10. The Supreme Judicial Court of Massachusetts has recently adopted the ALI definition. The court considered it "a restatement in modern terms" of the former Massachusetts rule, *i.e.*, M'Naghten with an irresistible impulse modification. Commonwealth v. McHoul (Mass.1967), 226 N.E.2d 556, 558.

11. United States v. Currens (3d Cir. 1961), 290 F.2d 751.

12. Wion v. United States (10th Cir. 1963), 325 F.2d 420, cert. denied 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964).

13. United States v. Freeman (2d Cir. 1966), 357 F.2d 606, 622–625.

14. Pope v. United States (8th Cir. 1967), 372 F.2d 710, petition for certiorari pending.

15. Carter v. United States (5th Cir. 1963), 325 F.2d 697, cert. denied 377 U.S. 946, 84 S.Ct. 1353, 12 L.Ed.2d 308.

cally, rather than morally, oriented." *Durham* is considered a medically-oriented, or treatment-oriented definition, and the government contends that because the ALI definition speaks in terms of "substantial" capacity, "it creates the real danger that a jury might acquit those, who while morally responsible for their conduct, are nonetheless in need of psychiatric treatment."

The government recognizes "that the *Davis* formulation is not without some clumsiness and may be fairly replaced by more up to date language." It concurs "in the view that in most instances 'the exact wording of the charge and the actual name of the test are comparatively unimportant and may well be little more than an indulgence in semantics.' " Citing Pope v. United States, *supra,* n. 14. The government's suggested resolution of the problem is "that in future cases involving the issue of insanity, trial judges be advised to instruct in modern day language emphasizing that the jury must consider a defendant's knowledge, will and capacity for choice, with the additional admonition that the jury decision must translate those medical factors into a moral judgment."

■ We do not share the concern, expressed by the government, that the use of the word "substantial" renders the ALI definition over liberal. And we conclude that the ALI definition is preferable, in the light of present experience, to the definition used on the trial of this case, and approved in second *Davis.* Instructions with respect to the defense of insanity in cases tried in this circuit after the date of this decision, as well as in the retrial of Shapiro's case, should reflect the ALI definition, using the word "wrongfulness" in the place of "criminality." [16]

We note the instruction on Insanity found in § 5.03 of the Manual on Jury Instructions—Criminal, prepared for the judicial conference of this circuit.[17] This instruction is phrased in terms of what the government must prove. In order to adapt it to the ALI definition, and to indicate that the government must prove both the lack of substantial capacity to appreciate and the lack of substantial capacity to conform, this instruction requires revision as follows:

"The defendant has interposed insanity as a defense. The law presumes that a defendant is sane. This presumption is rebuttable. Where a defendant introduces some evidence that he had a mental disease or defect at the time of the commission of the crime charged, the prosecution must establish beyond a reasonable doubt that defendant did not have a mental disease, *or defect,* or that despite the mental disease *or defect* he had ~~the~~ *substantial* capacity *both to appreciate the wrongfulness* ~~either~~ ~~to~~ ~~know~~ ~~the~~ ~~criminality~~ of his conduct, *and* ~~or~~ to conform his conduct to the requirements of the law." [Additions are italicized; deletions are struck out.]

We have considered an additional argument raised by the government against any liberalization of the definition of the defense of insanity. This is that, except in the District of Columbia, there is no federal statute providing for automatic commitment of a defendant who is acquitted because the jury found him insane at the time the offense was committed. Indeed the rules of criminal procedure make no express provision for a special plea or special verdict of "Not guilty by reason of insanity." Determination of whether such defendant's own safety or that of the public requires that he be committed to a hospital is left to state officers and courts, and the responsibility for initiating a state proceeding is not expressly imposed on any federal officer. We agree that there is

16. This is the same choice of word made by the second circuit in Freeman, *supra,* N. 13, 357 F.2d at p. 622.

17. 33 F.R.D. 560. These are often called the *LaBuy* instructions in honor of the Honorable Walter J. LaBuy, Senior District Judge, and chairman of the committee which prepared them.

an undesirable gap in procedure for solving the problem when it arises, which it must under any definition of the defense of insanity, but we do not deem the existence of the gap a sufficient reason for rejecting the ALI definition.[18]

*Application to facts of this case.* A clinical psychologist, called by defendant, described the tests she had administered and stated that in her opinion Shapiro was a sociopathic personality; that he knew what he was doing and that it was wrong, but his is a "very impulsive personality with very weak control." The psychiatrist called by the defense testified that defendant suffers from a very severe personality defect which consists of being unable to avoid the performance of various acts; that he knew in a limited way that it was wrong to do the act. The penitentiary staff psychiatrist, called by the government, agreed with the diagnosis, and that Shapiro had "a significant impairment in ability to control his actions," although he said, "I feel that he retains a sufficient degree of control that I would have to say that to the best of my knowledge that he was * * * capable of controlling those impulses."

■ It is not clear that the experts agreed that Shapiro's difficulty is a mental disease or defect, and it may be that the jury would have considered Shapiro responsible even if instructed in terms of the ALI definition. Because, however, of the requirement of the *Davis* definition of complete destruction of the power to control one's acts, the use of that definition may well have been prejudicial to Shapiro in the light of the testimony, and we therefore reverse for a new trial.

■ We emphasize that as to all cases other than Shapiro's, the new rule, requiring instructions to reflect the ALI definition, applies prospectively, only, *i.*

*e.*, to trials commenced after the date of this decision.

The singling out of Shapiro as the sole beneficiary of any retrospective application of the new rule finds justification in the recent opinion written for the court by Mr. Justice Brennan in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 [June 12, 1967]:

"We recognize that Wade and Gilbert are, therefore, the only victims of pretrial confrontations in the absence of their counsel to have the benefit of the rules established in their cases. That they must be given that benefit is, however, an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum. Sound policies of decision-making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law, militate against denying Wade and Gilbert the benefit of today's decisions. Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making."

*Why not Durham?* Defendant apparently asked the district court to instruct on the basis of the *Durham Rule*. As stated in *Durham:* [19]

"The rule we now hold must be applied on the retrial of this case and in future cases is not unlike that followed by the New Hampshire court

---

18. See United States v. Freeman, *supra*, footnote 13, 357 F.2d at 625–626; United States v. Currens, *supra*, footnote 11, 290 F.2d at 775–776; Pope v. United States, *supra*, footnote 14, 372 F.2d at 731–732; Sauer v. United States (9th

Cir. 1957), 241 F.2d 640, 651–652; Powers v. United States (10th Cir. 1962), 305 F.2d 157, 158.

19. Durham v. United States (1954), 94 U.S.App.D.C. 228, 214 F.2d 862, 874–875, 45 A.L.R.2d 1430.

since 1870. It is simply that an accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect."

As later added:

"Consequently, for that purpose the jury should be told that a mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls. * * * " [20]

■ The function of a definition of the defense of insanity, as reflected in the instructions, is to aid the jury in deciding whether an accused who is mentally ill was, at the time of engaging in the offensive conduct, dominated or affected by his mental illness to so substantial a degree that society cannot in good conscience, hold him responsible for the conduct as a crime.[21]

Although *Durham* has an appeal by reason of its concept that if one's offensive conduct is a manifestation or symptom of a mental illness or defect, he should be cared for in a hospital rather than being subjected to punishment, yet we are not convinced that it serves the function of a definition of insanity better than or as well as the more conventional ones, particularly when the instruction must include the proposition that the burden is on the government to prove beyond a reasonable doubt that the defense has not been established.[22]

Certainty is scarcely possible in this troublesome area. It is our best judgment that the ALI definition is to be preferred over *Durham.*

We therefore reverse the judgment, and remand for a new trial, with instructions reflecting the ALI definition of the defense of insanity.

HASTINGS, Chief Judge (affirming in part and dissenting in part).

I concur in the majority opinion, *except* as to that part reversing the judgment of conviction and remanding the case for a new trial.

I agree that we should take a new look at the insanity rule to be applicable in the Seventh Circuit and that henceforth all district courts in the Seventh Circuit should follow the American Law Institute definition as set out in the majority opinion. Such a course of action is in keeping with the times and modern judicial trends.

However, I do not agree that the use of the insanity instruction given by the district court in the trial of this case amounted to prejudicial error requiring a reversal and a new trial.

I would affirm the judgment of conviction and make the application of this case prospective hereafter.

SCHNACKENBERG, Circuit Judge.

I would affirm the judgment of conviction of defendant Shapiro. With respect to Judge Fairchild's exhaustive consideration of the *Davis, M'Naghten* and *Durham* rules and the ALI definition, it must be remembered that the crucial decision with respect to the mental state of the defendant on trial rests with the jury, after it has heard the evidence and the court's instructions, and has had an opportunity to personally observe the de-

---

20. McDonald v. United States (1962), 114 U.S.App.D.C. 120, 312 F.2d 847, 851.

21. The author of this opinion has recorded his view that the best course would be to instruct the jury to answer the ultimate question just stated, provided the burden of proof on the issue were imposed on defendant. State v. Shoffner, *supra*, n. 8, 143 N.W.2d p. 461.

22. As far as federal courts are concerned, the rule is clear that the government has

the burden of proof on the issue, once the defense has introduced proof tending to establish insanity. Davis v. United States (the first *Davis* decision) (1895), 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499; Lynch v. Overholser (1962), 369 U.S. 705, 713, 82 S.Ct. 1063, 8 L.Ed.2d 211. It has, however, been held that a state may constitutionally impose the burden on the defendant. Leland v. Oregon (1952), 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302.

fendant. United States v. Igoe, Judge, 7 Cir., 331 F.2d 766, 767–768 (1964).

Fortunately, our society can trust the consensus of the jurors in making this determination, regardless of the difficulty lawyers and judges may experience in agreeing upon a statement defining insanity as a defense in a criminal trial.

KNOCH, Circuit Judge (dissenting in part).

I join in Judge Duffy's opinion with the following proviso. If we are to recommend an instruction for the future I would prefer to use the LaBuy instruction from § 5.03 of the Manual on Jury Instructions—Criminal with two small changes as shown below. The added word is in brackets. The omitted words are lined out.

> The defendant has interposed insanity as a defense. The law presumes that a defendant is sane. This presumption is rebuttable. Where a defendant introduces some evidence that he had a mental disease or defect at the time of the commission of the crime charged, the prosecution must establish beyond a reasonable doubt that defendant did not have a mental disease, or that despite the mental disease he had the capacity ~~either~~ to know the criminality of his conduct, ~~or~~ [and] to conform his conduct to the requirements of the law.

I would make this a recommendation only. I would not like to see any ironclad rule imposed on District Judges with the disastrous result that minor semantic variations which do not change the basic meaning would result in reversals.

DUFFY, Senior Circuit Judge, affirming in part and dissenting in part.

I concur in parts (1) to (3) of Judge Fairchild's opinion rejecting appellant's arguments based on variance, admission of a confession and cruel and unusual punishment.

The fourth and major issue presented by this case concerns the instruction given by the trial court on the defense of insanity. This Court today adopts the American Law Institute definition of insanity and reverses this conviction for a new trial.

I think that a reversal in this case is entirely unwarranted. What did the trial judge do that is now proclaimed to be reversible error? The answer is that the judge gave an instruction that was based upon the instruction approved by the United States Supreme Court in Davis v. United States, 165 U.S. 373, 379, 17 S.Ct. 360, 41 L.Ed. 750. The trial judge gave an instruction that was recognized as proper in this Circuit.

The majority recognizes that the requisite elements of cognition and volition are present in the Davis instruction as well as in the A.L.I. definition. All relevant expert testimony on the defendant's mental condition was received in evidence. The instruction which was given should be read in its entirety rather than with attention focused upon individual words. When considered as a whole, it is clear that the instruction contained all the required elements for the jury's consideration, and was in accordance both with the prior decisions of this Court [1] and with the Supreme Court's decision in Davis. In these circumstances, the failure to use the A.L.I. definition, which has not prior to this time been adopted by this Circuit, cannot, in my opinion, constitute reversible error. See Pope v. United States, 8 Cir. (1967), 372 F.2d 710, 735–736; Wion v. United States, 10 Cir. (1963), 325 F.2d 420, 430, cert. den. 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309; United States v. Currens, 3 Cir. (1961), 290 F.2d 751, 776–777 (Judge Hastie dissenting in part).

1. United States v. Cain, 7 Cir. (1962), 298 F.2d 934; United States v. Westerhausen, 7 Cir. (1960), 283 F.2d 844. See also United States v. Cooks, 7 Cir. (1966), 359 F.2d 772; United States v. Williams, 7 Cir. (1967), 372 F.2d 76, both decided subsequent to the trial below.

I have no objection to the use of an instruction such as that set forth in Judge Fairchild's opinion in future cases in this Circuit. We should recognize, however, that much of the difference between the various definitions which have been proposed is one of language rather than of substantive legal standards. As has been recently stated:

"We still entertain a deep suspicion that, despite the welter of legal, psychiatric, and philosophic theory and verbiage, much of the legal problem is basically semantic and engulfed in words, and that a practical American jury in any given case (except, possibly, upon the McDonald-Durham approach), will reach the same conclusion, whether it be instructed along traditional *M'Naghten* and irresistible impulse lines, or upon any of the approaches of *Currens* or *Freeman* or variations thereof." Pope v. United States, *supra*, 372 F.2d at page 735.

Since the instruction given was in accordance with appropriate legal standards, I would affirm the judgment.