**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald Lee SENNETT, Defendant-
Appellant.**

**No. 74–1193.**

United States Court of Appeals,
Seventh Circuit.

Heard Sept. 19, 1974.

Decided Nov. 14, 1974.

As Modified Nov. 18, 1974.

Rehearing Denied Dec. 26, 1974.

James G. Walker, Bloomington, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., Max E. Goodwin, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before SPRECHER and TONE, Circuit Judges, and PERRY, Senior District Judge.*

TONE, Circuit Judge.

Defendant Donald Lee Sennett was convicted of bank robbery and sentenced under Section 5010(b) of the Youth Corrections Act, 18 U.S.C. § 5010(b). At the trial, his only defense was insanity. He contends that the giving of an instruction referring to a presumption of sanity and argument based on that instruction created prejudicial error, that other trial errors occurred, and that refusal to disclose the presentence report was also error.

The defendant, while 18 years old and a freshman at Illinois State University, robbed the People's Bank of Lexington, Illinois, of about $7,964. He was arrested within an hour after the crime and made a complete confession.

At the trial before a jury, the defendant, admitting that he had committed the robbery, raised the defense of insanity and offered the testimony of a psychiatrist who had examined him four days after the robbery to the effect that at the time of the robbery the defendant suffered from a psycho-neurotic obsessive-compulsive neurosis, which, although it did not make him incapable of distinguishing right from wrong, did render him unable to conform his conduct to the requirements of the law. The Government, in rebuttal, offered expert testimony tending to refute the testimony of the defendant's expert.

*References to the Presumption of Sanity*

The District Court gave the jury, verbatim, the insanity instruction mandated by this court, sitting in banc, in United States v. Shapiro, 383 F.2d 680 (7th Cir. 1967), which is as follows:

"The defendant has interposed insanity as a defense. The law presumes that a defendant is sane. This presumption is rebuttable. Where a defendant introduces some evidence that he had a mental disease or defect at the time of the commission of the

*Senior District Judge J. Sam Perry of the Northern District of Illinois is sitting by designation.

crime charged, the prosecution must establish beyond a reasonable doubt that defendant did not have a mental disease or defect, or that despite the mental disease or defect he had substantial capacity both to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law."

In addition, the court, at the request of the defendant, gave the following additional instruction on the issue of insanity:

"Under the defendant's plea of not guilty, there is an issue as to his sanity at the time of the alleged offense. The law does not hold a person criminally accountable for his conduct while insane, since an insane person is not capable of forming the intent essential to the commission of a crime.

"The sanity of the defendant at the time of the commission of the alleged offense is an element of the crime charged and must be established by the Government beyond reasonable doubt, just as it must establish every other element of the offense charged.

"A defendant is insane within the meaning of these instructions if, at the time of the alleged criminal conduct, as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

In his closing argument the prosecutor paraphrased the *Shapiro* instruction, including its recital of the presumption of sanity, and argued that the defendant's evidence of insanity "was so weak the jury could legitimately disregard it and stop right there, but you may, on the other hand, wish to weigh all of the evidence, both the Government's and the defense in this case." Defendant did not object to this argument, but he had previously objected, at a conference on instructions held by the court, to the giving of the *Shapiro* instruction, on which the argument was based.

The stated grounds for defendant's objection, reiterated in this court, were that the instruction referred to insanity as a defense and, even though some evidence of insanity had been introduced, recited the presumption of sanity. The defendant's position, as stated in oral argument, is that it is never appropriate to advise the jury of the presumption of sanity as the *Shapiro* instruction does; for if there is no evidence of insanity an instruction on the insanity defense is unnecessary, and if there is some evidence of insanity the presumption disappears as a matter of law and it should not be mentioned to the jury.

We are asked to hold that it was error for the District Court to give the insanity instruction which this court seven years ago, in its in banc decision in *Shapiro,* directed district courts to give in future cases. The defendant bases this request on the later decision of a panel of this court in United States v. Bohle, 445 F.2d 54 (7th Cir. 1971).

The issue before the court in the *Shapiro* case was whether the District Court had correctly defined insanity in its instructions to the jury. The majority opinion carefully analyzed the American Law Institute's definition (ALI, Model Penal Code, Proposed Official Draft, May 14, 1962, p. 66, § 4.01), compared it with the definition in Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), and decided that the so-called LaBuy instruction on insanity (Manual on Jury Instructions in Federal Criminal Cases, § 5.03 (1965), 33 F.R.D. 560) should be modified "in order to adapt it to the ALI definition." The court then set forth the instruction as it was to be given in the future, which is the instruction the District Court gave in the case at bar.

It was not argued in *Shapiro* that it was error to refer to insanity as a defense or to speak of a presumption of sanity. The court, therefore, did not consider those arguments when it left unchanged the recitals of the LaBuy instruction concerning the defense of insanity and the presumption, while modifying the portion of the instruction defining insanity.

In the *Bohle* case (445 F.2d 54), in the face of evidence that the defendant suffered from a mental disease or defect at the time of the commission of the offense, the prosecutor referred in his closing argument to "a presumption of sanity" and said the jury had to determine whether the presumption was overcome. When the defendant's counsel objected, the court said, "I think the statement is proper." In this court, a majority of the panel, interpreting Davis v. United States, *supra,* 160 U.S. 469, 16 S.Ct. 353 (1895) and following Otney v. United States, 340 F.2d 696, 698–699 (10th Cir. 1965), held that the presumption of sanity disappears when some evidence of insanity is introduced, and that "the statement of the prosecutor, concurred in by the court, was erroneous as a matter of law in advising the jury in effect that it could weigh the presumption against Bohle in reaching its verdict." 445 F.2d at 71.

In the concluding paragraph of the section of its opinion dealing with this point, the *Bohle* majority said, "Further, we find it prejudicially erroneous where the jury is misinformed concerning what it could consider on the critical issue of a case and that misinformation is reenforced by the court after the defendant challenges its accuracy." 445 F.2d at 71. The court, however, held that three other trial errors had occurred (*id.* at 63, 69, 75), and, at the conclusion of the entire opinion, said, " . . . without deciding whether any of the errors recited herein would, standing alone, be of sufficient magnitude in this case to require reversal, we are convinced that, when taken together, their prejudicial impact was sufficient to deny Bohle a fair trial on the issue of insanity." *Id.* at 76.

Although the opinion does not disclose the instructions given to the jury on the issue of insanity in *Bohle,* the record in that case shows that the District Court gave the *Shapiro* instruction. The treatment at trial of the presumption of sanity in *Bohle* and the case at bar were thus similar. In each case the prosecutor, in his closing argument, made a reference to the presumption of sanity, based on the *Shapiro* instruction which was to be given to the jury, and contended in substance that the jury, after considering the evidence of insanity, could determine that the presumption was not overcome.

 Here, unlike *Bohle,* there was no objection to the argument at the time it was made; but, at the conference on instructions held shortly before the argument, defendant's counsel had objected to the giving of the *Shapiro* instruction because of its reference to the presumption, and the court had overruled that objection. Counsel was therefore not required, in order to preserve error, to object to an argument based on that instruction. Nevertheless, because such an objection was not made, the prosecutor's argument was not reenforced in the presence of the jury by a ruling of the court, as it was in *Bohle.*

The only direction the jury in the case at bar received from the court with respect to the law applicable to the defense of insanity came from the instructions. These included not only the *Shapiro* instruction but the instruction set forth above which defendant tendered. By giving the latter, the court unequivocally told the jury that in this case the government had the burden of proving beyond a reasonable doubt that the defendant was sane.[1]

---

1. Defendant also complains that the District Court, in reading the instructions to the jury, gave undue emphasis to the *Shapiro* instruction by reading it twice, whereas the defendant's tendered instruction on insanity was only read once. The rereading of the *Shapiro* instruction occurred because the court's reading of the instructions was interrupted by a side bar conference, and upon returning to the reading the court began over again the portion dealing with the defense of insanity. The reason for the rereading must have been apparent to the jury, and no prejudice resulted.

■ *Bohle* is therefore distinguishable, because the error found there was one of several, the cumulative effect of which required reversal, and because here the combined effect of the absence of reenforcement by the court of the prosecutor's argument and the added instruction to the jury was to eliminate any substantial risk that the jury would give any weight to the presumption of sanity. We need not decide, therefore, whether this panel would have reached the same result as the majority of the *Bohle* panel did on the facts of that case, or the extent to which the ruling in *Bohle* is arguably inconsistent with the law as stated in the *Shapiro* instruction. We decide only that there is no showing of substantial prejudice in this case.

■ The *Bohle* opinion does not suggest that, as defendant argues, it is error to refer to insanity as a defense. We hold that it is not, so long as the jury is adequately instructed concerning the government's burden, as it was here.

■ In light of the considerations discussed in the *Bohle* opinion, the following instruction, instead of the *Shapiro* instruction, should be given in future cases when insanity is raised as a defense and some evidence of insanity is introduced:

> "In this case the sanity of the defendant at the time of the offense charged is an issue. This means that, in addition to proving beyond a reasonable doubt the elements of the offense charged, the prosecution must also prove beyond a reasonable doubt that at the time of the offense charged the defendant did not have a mental disease or defect, or that despite the mental disease or defect he had substantial capacity both to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law."

While we do not accept defendant's argument that the reference to insanity as a defense in the *Shapiro* instruction is erroneous, we think the above introductory sentence is preferable. Also, following the reasoning of *Bohle*, we have omitted in the above instruction the introductory clause found in the last sentence of the *Shapiro* instruction, "Where a defendant introduces some evidence that he had a mental disease or defect at the time of the commission of the crime charged . . . ." Whether there is "some evidence" is a question for the court, not the jury. *Bohle*, 445 F.2d at 71.

Since we are modifying a direction given by the court in banc in *Shapiro* for the conduct of future cases, we have circulated this opinion among all judges of this court in regular active service. No judge has requested that the case be reheard in banc.

### Other Trial Errors

■ The District Court excluded the testimony of defendant's supervisor in his part-time employment in the student union dining room that defendant was "very cooperative" and performed his assignments as instructed. The court also excluded the testimony of defendant's roommate that during a period of several months, ending one or two months before the robbery, the defendant stated from time to time in talks they had that "he was unsure of his future," that "things seemed sort of confused to him," that he "really didn't know what he wanted," that he "was just mostly concerned with where he was going, that's all, and about the people in his life, his family," and that there was "a lack of love and understanding among the family." It is contended that this evidence had a bearing on defendant's mental condition. Assuming that it did, it is largely cumulative, the defendant himself having been permitted to testify without limitation about his personal history and activities and the subjects of the offer of proof made through the roommate. Defendant's expert was allowed to testify in full about what defendant told him. All this evidence was uncontroverted. There was ample evidentiary foundation for the opinion of defendant's expert without the excluded testimony.

Excluding it did not result in prejudice to defendant.

■ It is also contended that the district judge repeatedly and unjustly disparaged defendant's counsel in the presence of the jury and thereby deprived defendant of a fair trial. We have carefully examined the entire transcript of the trial proceedings. We are satisfied that the incidents complained of, whether considered singly or together, were trivial in the context of the entire trial and did not affect defendant's rights or prejudice him in the eyes of the jury. *See* United States v. Glasser, 116 F.2d 690, 704–705 (7th Cir. 1940).

*Refusal to Disclose Contents of Pre-Sentence Report*

After conviction the District Court ordered a presentence report and subsequently, after denial of defendant's motion for new trial, ordered him committed for observation and study under Section 5010(e) of the Youth Corrections Act, 18 U.S.C. § 5010(e). Upon return of the study report by the Chairman of the Youth Division of the United States Board of Parole, defendant's counsel moved for disclosure of the study report and shortly thereafter moved also for disclosure of the presentence report or, in the alternative, that part the court "has or will rely on in arriving at sentence." The court allowed counsel for the parties to see the study report but denied the motion for disclosure of the presentence report. Defendant asserts that the denial was error.

This court held in United States v. Miller, 495 F.2d 362 (7th Cir. 1974) that "a district court should hereafter state any grounds in the presentence report motivating the imposition of the sentence," and that, "If the trial judge denies a motion seeking access to a presentence report, he should henceforth make it clear that his sentence determi-

nation is not predicated on the contents of the report or describe the substance of any matter he considers significant." 495 F.2d at 364–365.

■ While the rule of the *Miller* case is to operate prospectively only, and the sentence in this case was imposed on February 8, 1974, two months before *Miller* was decided, that rule would not require reversal here even if it were applicable. It is clear from the transcript of the sentencing hearing that the trial judge did not rely upon any part of the presentence report and that he relied solely upon the study report prepared pursuant to Section 5010(e) of the Youth Corrections Act.[2] That report was disclosed to counsel for defendant before the sentencing hearing and he referred to it and relied upon it in his argument at that hearing. He asked the court "to sentence the defendant under either § 5010(a) [of the Youth Corrections Act], which we consider preferable, or if the Court thinks that more control is needed, sentence under § 5010(b)." The latter subsection makes applicable by reference Section 5017 of the Act, 18 U.S.C. § 5017, which provides for conditional release of the youth offender within four years and unconditional discharge within six years of his conviction. The district judge adopted the second alternative, stating that in doing so he was relying upon the study report. The judge said that he based his sentencing decision on "what the authorities down there think about it under the Youth Corrections Act," they having given "the requisite tests that would determine what should be done about it" and having reported that "he needs further supervised training, and that's why I am following their advice." Under the circumstances, the court's refusal to order disclosures of any part of the presentence report to defendant was not prejudicial.

The judgment is affirmed.

Affirmed.

2. Although at one point in his explanation of the reasons for his sentencing decision the judge spoke of "the Probation report that I

have received," it is apparent from his statement in its entirety that he was referring to the study report.